JEWELL v. KELLEY.

1. FRAUDULENT CONVEYANCES—DEEDS — MORTGAGES — EVIDENCE.
   On a bill attacking the transfer of certain parcels of land from a husband to his wife in fraud of creditors, evidence examined, and *held*, that her title to two parcels was not fraudulently acquired, and that her title to a third parcel obtained by a mortgage upon the three parcels could not be disputed.

2. SAME—BILL OF SALE—EVIDENCE.
   On said bill attacking a bill of sale from a husband to his wife, evidence examined, and *held*, to sustain the allegations of the complaint.

3. WITNESSES—FALSUS IN UNO, FALSUS IN OMNIBUS—RULE LIMITED.
   The rule of "falsus in uno, falsus in omnibus" is limited in its application, since a falsifier usually tells many truths, and it is the province of courts and juries to sift the true from the false; corroboration being a potent factor.

Appeal from Allegan; Padgham, J. Submitted October 13, 1908. (Docket No. 46.) Decided January 4, 1909.

Judgment creditor's bill, and also in aid of execution, by Fred Jewell against Josie Kelley and Michael Kelley. From a decree for complainant, defendants appeal. Modified.

*Wilkes & Stone*, for complainant.

*Charles N. Thew* (*Frank E. Knappen*, of counsel), for defendants.

HOOKER, J. Michael and Josie Kelley, husband and wife, are made codefendants in a creditors' bill, also filed in aid of execution issued against the husband, to reach, *first*, an 80-acre parcel of land including their homestead; *second*, a 55-acre parcel; *third*, a 40-acre parcel called

the "Sinkler farm;" *fourth*, certain personal property. To prove his case, the complainant, in addition to the judgment and execution returned unsatisfied, showed a deed from Michael Kelley, Sr., and wife, to defendant Michael Kelley, his son, of parcel No. 1 and the undivided one-half of parcel No. 2. This deed was dated December 8, 1891. Also a deed dated March 2, 1902, from John Kelley to Michael Kelley of the undivided one-half of parcel 2. Also a deed of both parcels (1 and 2) from Michael Kelley to Josie Kelley, dated January 30, 1904. Also a bill of sale from Michael to Josie Kelley, dated January 30, 1904, conveying 5 horses, 16 head of cattle, 25 swine, 2 wagons, 2 buggies, 3 sets harness, 1 pair bob sleighs, being the whole or greater part of his personal property, and constituting the fourth item referred to. Also a deed from one Sinkler to Josie Kelley of parcel 3, being 40 acres which the proof shows to have been purchased by giving a mortgage upon that and the other parcels in payment. This deed was dated August 27, 1904.

The defendants claimed, and undertook to show, that Josie participated in no attempt to defraud creditors, and that she knew of no such design on the part of her husband, and her counsel say that the case "narrows down" to the question whether she paid an adequate or reasonable compensation for the property. It is her claim that the deed from her husband to her was made in compliance with a written contract, made soon after her marriage to Michael, to which Michael, herself, and Michael's parents were parties, and that it covered parcels 1 and 2; that this contract was burned in their house. This contract is said to have grown out of relations then existing between Michael and his brother John, and their parents. It seems to be conceded that Michael was in possession of parcel 1, but under an obligation to support his parents for life, while both John and Michael were each bound to pay to their parents $100 per year for their lives. The parents had a life estate in parcel 1. John owned an undivided half interest in parcel 2. Josie tes-

tified that previous to their marriage Michael gave her to understand that he owned parcel 1, but after marriage she found that it was subject to mortgages and to the life estate of Michael, Sr. She objected to living upon the place, and the result was a contract, by the terms of which she agreed to remain and care for the old people during their lives. They were to surrender to her the amount due, and to become due, upon the annuity from Michael. Michael, her husband, was to receive from her a sum of money, which she had received from various sources at the time of and soon after her marriage, and to be released from his annuity obligations, and was to deed to her parcels 1 and 2 on her performance of the contract. Subsequently on her agreeing to release John from his liability to the old people, John agreed to deed his half of parcel 2 to her. She intrusted this business to Michael, who took the deed to himself, and before she could induce him to deed the parcels to her she was compelled to pay him further sums—$800, we believe, in all—when he deeded to her, as stated. About the same time, and as a part of the last transaction, the bill of sale was made, while the purchase of the Sinkler place occurred later. It is apparent that, if she was the owner by an untainted title of parcels 1 and 2, her title to the Sinkler lot cannot be disputed, while if her title to those parcels was obtained under circumstances that made it a fraud on Michael's creditors, the fund raised by mortgage upon parcels 1 and 2 might be followed by creditors to the Sinkler land, if any went into that parcel. Upon a hearing upon proofs taken in open court, the learned circuit judge who saw the witnesses was of the opinion that the transaction was fraudulent, and therefore granted the relief prayed. We have examined the testimony with a full sense of the responsibility resting upon us, and of the advantage which the trial judge has over an appellate court, where the latter has only a printed copy of the testimony.

It is a significant fact that the deed from Michael to his

wife and the bill of sale occurred simultaneously, and at a time when the danger from creditors became acute, but it does not necessarily follow that Josie's conduct was fraudulent. However much suspicion we may have of the entire transaction, there is evidence in support of Josie's claim. Several witnesses testify to her receiving sums of money from her father and mother, and manifestly this could not be easily contradicted except by circumstances. Complainant sought to do this by showing such poverty upon the part of her parents as to render the falsity of the statements probable; but we consider it well proven that both had property, or the means of getting it, while she and her husband, her mother, and her sister testify that she received the money from them, and she and her husband say that she paid it to him, and there is a little corroborating testimony from another witness. Again, she did care for her husband's parents during life, and neither John nor Michael ever paid his share of the amount. In John's case there was a balance unpaid. John testified that his father deeded to each of the two boys an 80-acre lot and an undivided part of parcel 2. John gave a mortgage back to secure the annuity of $100; Mike took his under similar, though additional, conditions, one of which was his obligation to support his parents. When this occurred is not shown. The witness stated further that when Josie came there, a sister of the boys made trouble. He did not explain it, but Josie and Michael did, and gave it as the first cause of the refusal of Josie to remain. John added that soon after, or about that time, his father and mother said a new arrangement had been made, whereby Josie was to have the farm after their death. The arrangement whereby he deeded his half of parcel 2 was at his father's request. If this testimony is true, it tends to corroborate Josie. While it is plausibly argued that this story of the written contract is improbable, the circumstances show it not to be so improbable as alone to justify disbelief of sworn testimony. If the testimony of Michael, Josie, and John is true about

the agreement, a written contract was the natural and proper method of evidencing it, though part performance may have made it enforceable specifically, if not in writing. Upon either theory, Josie became entitled to the land, and Michael perpetrated no fraud upon creditors in carrying it out, for the law would have compelled it, creditors to the contrary notwithstanding. And as already stated, this view renders a further discussion of parcel 3 unnecessary. It is with misgiving that we venture to differ from the learned circuit judge upon a question of fact, where he has, and we have not, seen the witnesses, but when the record induces a conviction somewhat positive, we have no alternative.

As to the bill of sale as much cannot be said. We are far from being convinced that it was not given and received with an intent to hinder, delay, and defraud creditors. It was not required by a contract of long standing, if it was not a voluntary transfer. The consideration is less clearly proved, while its adequacy is subject to some doubt. We are of the opinion that the trial judge was right in not sustaining it. Josie denies knowledge of her husband's fraudulent intention. She denies a fraudulent knowledge. We doubt these. Counsel for complainant may invoke the rule "falsus in uno, falsus in omnibus," and urge its application to the other branch of the case, but there are limitations on the application of the rule, for a falsifier usually tells many truths, and it is the province of courts and juries to sift the true from the false; corroboration being a potent factor. Michael Kelley impresses us as being a wilful, selfish, and, perhaps, unscrupulous man. He did not hesitate to deceive his betrothed, and he does not attempt to deny an inclination and willingness to absorb all cash that came to the possession of his wife, which he apparently succeeded in doing. His property was heavily mortgaged and otherwise incumbered, and he was deeply in debt. Aside from the filial duty owed his parents, which apparently did not rest very heavily

upon him, he had little inducement to oppose his parents' wishes to make a new contract with Josie. The preponderance of evidence appears to us to sustain defendants' claim as to the land.

The decree of the circuit court will be modified, and a decree entered here in accordance with this opinion, declaring the bill of sale fraudulent and void as to complainant, and subjecting the property described therein to complainant's claim. As to the several parcels of land, relief will be denied. Complainant will take costs of the circuit court, defendant Josie Kelley of this court.

BLAIR, C. J., and GRANT, MOORE, and McALVAY, JJ., concurred.